IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

———————

**NIKOLAS CROSBY-GARBOTZ,**
*Petitioner,*

*v.*

**HON. HOWARD P. FELL, JUDGE PRO TEMPORE OF THE SUPERIOR COURT OF
THE STATE OF ARIZONA IN AND FOR THE COUNTY OF PIMA,**
*Respondent Judge,*

**STATE OF ARIZONA,**
*Real Party in Interest.*

———————

No. CR-18-0050-PR
Filed February 5, 2019

———————

Special Action from the Superior Court in Pima County
The Honorable Howard P. Fell, Judge
No. CR20165511-001
**REVERSED**

Opinion of the Court of Appeals, Division Two
244 Ariz. 339 (App. 2017)
**VACATED**

———————

COUNSEL:

Richard L. Lougee, Tucson, and Bradley A. TenBrook, Markus W. Risinger
(argued), Woodnick Law, PLLC, Phoenix, Attorneys for Nikolas Crosby-
Garbotz

Barbara LaWall, Pima County Attorney, Jacob R. Lines (argued), Deputy
County Attorney, Tucson, Attorneys for State of Arizona

Amy Knight, Kuykendall & Associates, Tucson, and Carol Lamoureux,
Hernandez & Hamilton, PC, Tucson, Attorneys for Amicus Curiae Arizona
Attorneys for Criminal Justice

Timothy J. Agan, Lindsay Herf, Arizona Justice Project, Phoenix, Attorneys
for Amicus Curiae Arizona Justice Project

———————

1

CHIEF JUSTICE BALES authored the opinion of the Court, in which VICE CHIEF JUSTICE BRUTINEL and JUSTICES PELANDER and BOLICK joined. JUSTICE TIMMER, joined by JUSTICES GOULD and LOPEZ, dissented.

_____

CHIEF JUSTICE BALES, opinion of the Court:

**¶1** Issue preclusion, also known as collateral estoppel, precludes relitigating an issue of fact in a later case when, in a previous case, the same issue was "actually litigated, a final judgment was entered, and the party against whom the doctrine is to be invoked had a full and fair opportunity to litigate." *Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573 (1986). We hold that issue preclusion may apply in a criminal proceeding when an issue of fact was previously adjudicated in a dependency proceeding and the other elements of preclusion are met. We find that those elements are met in this case.

## I.

**¶2** On July 5, 2016, Nikolas Crosby-Garbotz ("Crosby") stayed home with his five-month-old baby (here referred to as "C.C.") while Lacy Crosby ("Mother") went to work. C.C. became fussy and later had a seizure and appeared dazed and went limp. Crosby called 911. C.C. was taken to the hospital, where she was diagnosed with subdural hematoma, bilateral retinal hemorrhaging, and retinoschisis. She did not have a skull fracture or trauma to her neck or upper body.

**¶3** Days later, the State, through the Department of Child Safety ("DCS"), took temporary custody of C.C., and on July 13, 2016, DCS filed a dependency petition alleging that C.C. was dependent as to Crosby because he abusively shook her to the point of causing bleeding in her brain and eyes. DCS also alleged C.C. was dependent as to Mother because she was unable to protect C.C. from Crosby.

**¶4** On November 10, 2016, the dependency trial began and lasted for eleven nonconsecutive days, with the juvenile court taking the matter under advisement on February 16, 2017. While the dependency hearing was ongoing, a grand jury on December 15, 2016, returned an indictment against Crosby alleging child abuse under A.R.S. §§ 13-3623(A) and 13-3601. Specifically, the State charged Crosby with one count of child abuse alleging that:

on or about the 5th day of July, 2016, NIKOLAS CROSBY-GARBOTZ committed child abuse by intentionally or knowingly causing physical injury to C.C., a child less than fifteen years of age, under circumstances likely to produce death or serious physical injury, to wit: BY CAUSING BRAIN DAMAGE AND RETINAL BLEEDING AND RETINOSCHISIS, in violation of A.R.S. § 13-3623(A)(1), 13-3601.

¶5   From July 2016 through March 2017, C.C. was not in Crosby's or Mother's care due to the pending dependency petition. On March 8, 2017, the juvenile court issued its ruling, dismissed the dependency petition as to both parents, and returned C.C. to Mother and Crosby's care. The judge ruled that DCS had not met its burden of proof in establishing a dependency, expressly finding that "the Department has not met its burden of proving by a preponderance of the evidence that Mr. Crosby inflicted physical injury, impairment of bodily function, or disfigurement to [C.C.]" and "the Court has found that it is more likely than not that [Crosby] did not injure [C.C.]." The State did not appeal the dependency judgment.

¶6   In May 2017, Crosby moved to remand for a redetermination of probable cause in the criminal proceeding, which the trial court denied. Crosby then moved to dismiss, arguing that issue preclusion prevented the State from relitigating whether he had abused C.C. on July 5, 2016. After an evidentiary hearing, the trial judge denied the motion. Crosby sought special action relief from the court of appeals, which accepted jurisdiction but denied relief. *Crosby-Garbotz v. Fell*, 244 Ariz. 339, 340 ¶ 1, 342 ¶ 8 (App. 2017).

¶7   Although the court of appeals noted that most elements of issue preclusion appeared to have been met, *id.* at 344 ¶¶ 15–17, it declined to apply preclusion, *id.* at 345 ¶ 18. Relying on cases from other jurisdictions, the court held in blanket fashion that preclusion should not apply in these circumstances because the state might forego dependency proceedings if it were precluded from relitigating issues in a later criminal proceeding, or it might instead present its criminal case in the dependency proceeding which "could unnecessarily complicate and delay the adjudication, placing an undue burden on the juvenile court system." *Id.* at

3

347 ¶ 28. The court also believed that "the distinction between juvenile and criminal proceedings would be impermissibly blurred." *Id.* Finally, the court refused to adopt a case-by-case approach to applying issue preclusion in this context. *Id.* ¶ 29.

¶8        We granted review because this case presents recurring issues of statewide importance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

**II.**

¶9        "Application of issue preclusion is an issue of law, which we review de novo." *Picaso v. Tucson Unified Sch. Dist.*, 217 Ariz. 178, 180 ¶ 6 (2007).

¶10        Issue preclusion serves to "protect[] litigants from the burden of relitigating an identical issue" and to "promot[e] judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). As our courts have noted, the doctrine seeks to avoid the basic unfairness associated with duplicative, harassing litigation. *See Circle K Corp. v. Indus. Comm'n*, 179 Ariz. 422, 426 (App. 1993).

¶11        Arizona has long recognized that "when the second case is upon a different cause of action, the prior judgment or decree operates as an estoppel only as to matters actually in issue, or points controverted, upon the determination of which the judgment or decree was rendered." *MacRae v. Betts*, 40 Ariz. 454, 458 (1932) (citing *Balt. S.S. Co. v. Phillips*, 274 U.S. 316, 319 (1927)). This common law doctrine, now termed issue preclusion, applies when a fact "was actually litigated in a previous suit, a final judgment was entered, and the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter and actually did litigate it" and the fact "was essential to the prior judgment." *Chaney Bldg. Co.*, 148 Ariz. at 573; *see also* Restatement (Second) of Judgments § 27 (Am. Law Inst. 1982). In criminal cases, we also continue to require mutuality of parties or their privities as an additional element of issue preclusion, *see State v. Edwards*, 136 Ariz. 177, 188 (1983), which is consistent with the Restatement's more general issue preclusion rule which applies in a "subsequent action between the parties," *see* Restatement § 27. When one of these elements is not met, preclusion does not apply. *See Kopp v. Physician Grp. of Ariz., Inc.*, 244 Ariz. 439, 442 ¶¶ 14–15 (2018) (affirming *Chaney* and

refusing to give preclusive effect to stipulated dismissals with prejudice because no issues were "actually litigated").

¶12      No previous decision by this Court, however, has considered whether a finding in a dependency adjudication may have preclusive effect in a criminal prosecution. On this issue, the State and Crosby disagree on the application of two issue preclusion cases. In *Ferris v. Hawkins*, the court of appeals declined to apply issue preclusion from one administrative proceeding to a later, different administrative proceeding, finding the two proceedings involved distinct legal rights and remedies. 135 Ariz. 329, 332 (App. 1983). *Fitzgerald v. Superior Court* involved a civil forfeiture proceeding in which the trial court found that the defendant had not possessed or used the items in question for any criminal activity, and the court of appeals held that issue preclusion barred the state's relitigating those issues in a later prosecution. 173 Ariz. 539, 548 (App. 1992).

¶13      Neither case is dispositive here. *Fitzgerald* involved a "quasi-criminal" forfeiture proceeding and a later criminal proceeding. 173 Ariz. at 545–46. *Ferris* addressed successive administrative proceedings in which the state may not have had adequate opportunity and incentive to fully litigate the issue in question in the first proceeding. 135 Ariz. at 332 n.3. Neither case determined whether a finding in a non-criminal dependency adjudication could ever have preclusive effect in a criminal case; nor did either case adopt a categorical rule applying or rejecting preclusion in the circumstances presented here.

¶14      In contrast to *Fitzgerald* and *Ferris*, here the court of appeals relied on public policy to adopt a categorical rule barring issue preclusion. The court recognized that the California Court of Appeals reached a different conclusion in *Lockwood v. Superior Court*, 206 Cal. Rptr. 785 (Ct. App. 1984), but noted that another California appellate panel had refused to follow *Lockwood* as inconsistent with intervening California Supreme Court precedent. *Crosby-Garbotz*, 244 Ariz. at 345 ¶¶ 19–21, 28. The court also pointed to opinions from other jurisdictions that either rejected *Lockwood* or reached a different result. *Id.* at 345–47 ¶¶ 22–27.

¶15      As the court of appeals observed, *Lockwood* "is not meaningfully distinguishable from the case before us." *Id.* at 345 ¶ 19. There, the state brought a dependency petition against both parents alleging abuse, and later filed criminal charges. *Lockwood*, 206 Cal. Rptr.

at 786. After the juvenile court found no abuse and dismissed the dependency petition, the parents unsuccessfully sought to invoke issue preclusion to dismiss the criminal charges. *Id.* Reversing the trial court's ruling, the California Court of Appeal noted that although the dependency and criminal proceedings involved different purposes, such differences were "perhaps relevant to res judicata in the broad sense" but "not necessarily dispositive of the collateral estoppel question." *Id.* at 787. Noting that the issue – whether the parents had abused their child on a specific occasion – was the same in both proceedings, and the juvenile court had "expressly found no such abuse," the court of appeal found all elements of issue preclusion established and directed the trial court to dismiss the criminal charges. *Id.* at 787–88. That same year, Maryland's highest court also applied issue preclusion in similar circumstances, concluding that the state should not be given a second chance to prove alleged wrongful conduct and cause the defendant "to 'run the gantlet' a second time." *Bowling v. State*, 470 A.2d 797, 801 (Md. 1984) (quoting *Ashe v. Swenson*, 397 U.S. 436, 446 (1970)).

¶16 Other jurisdictions, however, have refused to apply issue preclusion in the dependency-to-criminal context. In so holding, courts have noted various policy reasons, including a concern that the state, in dependency proceedings, does not perform the "extensive preparation typically required for felony trials," *State v. Cleveland*, 794 P.2d 546, 551 (Wash. Ct. App. 1990), and the fact that the dependency and criminal proceedings serve "disparate" purposes, *People v. Gates*, 452 N.W.2d 627, 633 (Mich. 1990), as the juvenile proceeding is meant to protect children whereas the criminal proceeding's "ultimate litigated issue" is the accused's guilt, *People v. Moreno*, 744 N.E.2d 906, 912 (Ill. App. Ct. 2001).

¶17 We are not persuaded that these policy concerns justify an absolute bar on applying issue preclusion. Although criminal charges put at stake an accused's liberty, dependency proceedings affect liberty interests as well – the fundamental right of parents regarding their children's upbringing, *see* A.R.S. § 1-601(A); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284 ¶ 24 (2005) (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)), and a child's best interest, including "an interest in a 'normal family home,'" *see Kent K.*, 210 Ariz. at 286 ¶ 34 (quoting *Santosky*, 455 U.S. at 759). Thus, we reject the suggestion that the state does not take dependency proceedings as seriously as criminal prosecutions, and we likewise reject the notion that the state will forego dependency proceedings if issue preclusion may apply.

*See Crosby-Garbotz*, 244 Ariz. at 347 ¶ 28; *Cleveland*, 794 P.2d at 551. Furthermore, the concern that the state "might be compelled to present its entire criminal case in the dependency proceeding," *Crosby-Garbotz*, 244 Ariz. at 347 ¶ 28, is unavailing. If the state alleges that a child is dependent, it must present sufficient evidence to establish the necessary facts by a preponderance of the evidence. *See* A.R.S. § 8-844(C). If the state has such a case, it bears the burden of proving it. If the state cannot prove a dispositive fact under the preponderance standard, it is unlikely to be able to do so, absent new or additional evidence, in a subsequent criminal proceeding under the more-demanding standard of beyond a reasonable doubt.

¶18 Finally, the State argues that public policy counsels against applying issue preclusion because "[t]he public has a strong interest in the enforcement of our criminal laws." But the public also has a strong interest in the enforcement of the laws regarding the protection of dependent children. So too do parents have a strong interest in the care and upbringing of their children, and defendants have a strong interest in fundamental fairness.

¶19 The purposes of dependency and criminal proceedings are admittedly different. But issue preclusion and claim preclusion are also different, and sometimes mistakenly conflated. *See Circle K Corp.*, 179 Ariz. at 425–26; *cf. Hawkins v. Ariz. Dep't of Econ. Sec.*, 183 Ariz. 100, 103 (App. 1995) (noting that although issue and claim preclusion "have similar purposes, they are nevertheless different"). That two types of *cases* have different purposes does not affect the application of issue preclusion, but rather informs the application of claim preclusion. *See Lockwood*, 206 Cal. Rptr. at 787. Under claim preclusion, a final judgment may preclude later litigation of other causes of action based on the transaction or series of transactions out of which an action arises, considering "whether the facts are related in time, space, origin, or motivation." Restatement § 24. However, issue preclusion is narrower, and applies only to determinations that were essential to the judgment. *See id.* § 27. Furthermore, unlike claim preclusion, issue preclusion requires that the issue be "actually litigated" in the previous judgment. *4501 Northpoint LP v. Maricopa Cty.*, 212 Ariz. 98, 102–03 ¶¶ 25–26 (2006).

¶20 Applying preclusion from dependency to criminal proceedings is consistent with preclusion principles. *See* Allan D. Vestal,

*Issue Preclusion and Criminal Prosecutions*, 65 Iowa L. Rev. 281, 340 (1980) (stating that if burden of proof in prior civil action was lower than required in criminal case and state cannot meet lower burden, preclusion should bar attempt by state in criminal case to assert issue found against it in civil litigation). First, this Court has noted that "[c]ollateral estoppel in criminal cases is not favored and is applied sparingly." *State v. Goudeau*, 239 Ariz. 421, 455 ¶ 134 n.8 (2016) (alteration in original) (quoting *State v. Rodriguez*, 198 Ariz. 139, 141 ¶ 6 (App. 2000)). This language, which admittedly described federal rather than state law, suggests that preclusion is available in criminal cases as well as civil ones. Second, absolutely barring preclusion in criminal cases is neither supported by our precedent, *see, e.g.*, *State v. Little*, 87 Ariz. 295, 304–07 (1960) (adopting issue preclusion in criminal cases), nor finds favor in the Restatement, *see* Restatement § 28, cmt. g (noting that relief from preclusion "must be the rare exception" permitted "only when the need for a redetermination of the issue is a compelling one").

**¶21** The elements of issue preclusion serve to alleviate many of the concerns raised by the court of appeals and the State. If the State did not have a full and fair opportunity to litigate an issue, then preclusion will not apply. *See Chaney Bldg. Co.*, 148 Ariz. at 573. Issue preclusion may not apply, for instance, if a subsequent prosecution is based upon additional, material evidence of abuse that was not considered in the dependency proceeding, or if the State were unable to secure an expert witness in the dependency proceeding. Additionally, preclusion does not apply where circumstances are different, based on new evidence or events giving rise to subsequent prosecution. *Cf. Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 349 ¶ 17 (App. 2013) (no issue preclusion of best-interest inquiry in second proceeding where new evidence was presented nearly a year after judge found severance would not be in child's best interest). The party seeking to invoke preclusion must establish all its elements, and relitigation will be barred in only exceptional criminal cases.

**¶22** The dissent's observation that dependency and criminal proceedings are distinct and serve different purposes, ¶¶ 28, 34, does not support a blanket rejection of issue preclusion (though, as noted above, ¶ 19, it is relevant to claim preclusion). Moreover, the Restatement illustration cited by the dissent, ¶ 31, is inapposite, as it reflects the rule that one court's determination of an issue will not bar relitigation before another court having "special competency" to decide the issue. *See* Restatement

§ 28, cmt. d.  The juvenile and criminal divisions of the superior court are each competent to determine if a child was abused.  Applying preclusion also does not contradict the legislature's intent; indeed the dissent does not identify any statement of legislative intent but instead imputes intent based on its belief that preclusion should not apply.  Nor do we obstruct the executive's authority to initiate prosecutions. Our opinion does not prevent the state from pursuing parallel or successive proceedings; it only prevents the state from relitigating a factual issue that it had a full and fair opportunity to litigate, which it could not prove by a preponderance of evidence, and where the related judgment has become final, i.e. any appeals have been exhausted.  This no more infringes on executive prerogatives than does a judge dismissing a criminal case when the prosecution fails to present sufficient evidence on an element of a crime.  *See* Ariz. R. Crim. P. 20.

**III.**

**¶23**        Having determined that issue preclusion may apply from dependency to subsequent criminal proceedings, we turn to its application here.  At oral argument, the State conceded that there was a full and fair opportunity to litigate the issue at hand before the juvenile court, the issue was essential to that court's judgment, the issue was actually litigated, and the judgment was final and valid.  These concessions are supported by the record.

**¶24**        The State argues that because DCS and the County Attorney are not the same party, there is no mutuality of parties, and issue preclusion cannot apply.  The court of appeals did not address this argument.  *See Crosby-Garbotz*, 244 Ariz. at 345 ¶ 18.  We conclude that there was mutuality of parties.  The State, acting through DCS and the County Attorney, has brought its power to bear on Crosby through both the dependency and criminal proceedings.  That different legal offices handle different cases does not mean that the State is not a party in both actions.  The Attorney General's Office, which represented DCS in the dependency proceedings, not only has supervisory authority over county attorneys, *see, e.g.*, A.R.S. § 41-193(A)(4), (5), but is also responsible for handling appeals of criminal cases originally tried by county attorneys, who must furnish that office with a statement of facts and legal authority for appellate purposes, *see* A.R.S. § 11-532(B).  *Cf. Cleveland*, 794 P.2d at 549 (holding that the attorney general and county attorney constituted the same party for preclusion purposes, noting that "[t]he party against whom . . . collateral estoppel is asserted is

the State of Washington in both cases"); *Gates*, 452 N.W.2d at 630 (holding that the Department of Social Services and county prosecutor are the same party for preclusion purposes based on a "functional analysis"); *People v. Sims*, 651 P.2d 321, 332–33 (Cal. 1982) (holding that the district attorney's office and a county are the same party for preclusion purposes because they both act on behalf of the state).

¶25        The State also argues that the issues are not the same because the two proceedings "are governed by different substantive law and different procedures." This argument misses the mark. The precise issue here is whether Crosby abused C.C. on July 5, 2016, by shaking her, causing bleeding in C.C.'s brain and eyes. This factual issue was adjudicated in the dependency proceeding against the State. The same factual issue is the basis for the criminal charge. The State has not pointed to any additional evidence it was foreclosed from presenting in the dependency proceeding that would apply in the criminal case, nor has it indicated any changed circumstances that would make relitigation appropriate.

¶26        Crosby is using issue preclusion defensively as a shield, not as a sword. This is not an instance of a defendant attempting to use an accomplice's favorable factual determination against the government as offensive issue preclusion – a situation that would present different considerations. *See State v. Jimenez*, 130 Ariz. 138, 139–41 (1981) (refusing to abandon the mutuality requirement for collateral estoppel in criminal cases). Here, the State failed to prove in the superior court, at a lower burden of proof, that Crosby abused C.C. and thereby caused specific injuries on July 5, 2016. This issue was essential to the dependency allegations and was fully and fairly adjudicated during an eleven-day trial with testimony from several expert witnesses (including two experts the State called). The State then chose not to appeal, making the juvenile court's judgment final for purposes of preclusion. In these circumstances, the State cannot force Crosby to again litigate the same issue.

**IV.**

¶27        We vacate the court of appeals' opinion and remand this case to the superior court to dismiss the criminal charge.

TIMMER, J., joined by GOULD, J. and LOPEZ, J., dissenting.

**¶28** Arizona law empowers the state to address alleged parental child abuse in concurrent ways. The Department of Child Services ("DCS") may initiate dependency or termination-of-parental-rights proceedings in juvenile court, *see* A.R.S. §§ 8-533 and 8-841 to 8-847, and a prosecutorial agency may criminally prosecute the parent in superior court, *see* A.R.S. 13-3623. The proceedings serve different interests, and the legislature intended they proceed separately. Applying issue preclusion in the pending criminal case against Crosby for the common factual issue adjudicated in the dependency proceeding concerning C.C. interferes with this legislative structure and the executive's authority to simultaneously protect children through dependency proceedings and vindicate society's insistence that everyone obey our laws. The application also undermines the public's interest and role in criminal justice. I respectfully dissent.

**¶29** The doctrine of issue preclusion has several exceptions. *See* Restatement (Second) of Judgments § 28 (Am. Law Inst. 1982). Two exceptions apply here:

> A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them . . . .
> . . . .
> There is a clear and convincing need for a new determination of the issue . . . because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action . . . .

Restatement § 28(3),(5); *see Hullett v. Cousin*, 204 Ariz. 292, 298 ¶¶ 28–29 (2003) (applying Restatement § 28).

**¶30** First, a statutory limitation on the juvenile court's authority in dependency proceedings compels a conclusion that issue preclusion does not apply here. *See* Restatement § 28(3). Although the juvenile court has exclusive original jurisdiction over dependency proceedings, *see* A.R.S. 8-202(B), it has no authority to adjudicate pending criminal charges concerning events underlying the dependency allegations, *see* § 8-202(C)(1) ("[T]he juvenile court shall not consolidate . . . [a] criminal proceeding that

11

is filed in another division of superior court and that involves a child who is subject to the jurisdiction of the juvenile court."). Only the superior court adjudicating the criminal charges has that authority. Thus, the juvenile court here had no authority to adjudicate Crosby's criminal liability, and its determination that DCS failed to prove Crosby abused C.C. should not serve to effectively adjudicate the pending criminal charge. *See* Restatement § 28 cmt. d (stating a compelling reason not to apply issue preclusion exists if "the legislative allocation of jurisdiction among the courts of the state may have been designed to insure that when an action is brought to determine a particular issue directly, it may only be maintained in a court having special competence to deal with it" and thus "after a court has incidently [sic] determined an issue that it lacks jurisdiction to determine directly, the determination should not be binding when a second action is brought in a court having such jurisdiction").

¶31　　　Issue preclusion should not apply here even though the juvenile court's determination was necessary to the dependency adjudication. An illustration in Restatement § 28 supports this conclusion:

> H brings an action for forcible entry and detainer against W before a justice of the peace. W defends on the ground that the parties are legally married and that under the law of the State such an action cannot be maintained between spouses. The justice of the peace rejects the defense, ruling that the parties are not legally married. A subsequent action for divorce is brought between W and H in the domestic relations court, which has exclusive jurisdiction over divorce actions. The determination in the prior action that the parties are not legally married is not conclusive.

Restatement § 28, cmt. d, illus. 9. Like the child abuse issue here, whether H and W were legally married was properly decided by both courts. And just as the domestic relations court had exclusive authority over divorce actions and thus could not be bound by the justice court's determination of a common issue, the superior court here has exclusive jurisdiction in the pending criminal proceedings and cannot be bound by the juvenile court's determination that DCS failed to prove that Crosby abused C.C. Although the juvenile court is part of the superior court and not a different court, as in the illustration, the illustration is apt. The majority disagrees, asserting "[t]he juvenile and criminal divisions of the superior court are each

competent to determine if a child was abused." *See supra* ¶ 22. I do not quibble the point, but the legislature has decreed otherwise. By precluding the juvenile court from adjudicating a related, pending criminal case, the superior court is required to resolve the charges against Crosby through the criminal trial process. *See* Restatement § 28, cmt. d.

**¶32** Second, a clear and convincing need exists to permit a new determination in the pending criminal proceedings because otherwise the public interest would be adversely affected. *See* Restatement § 28(5). Section 8-202(C)(1) reflects a public policy that the superior court is the exclusive forum to adjudicate criminal charges when the state concurrently files a related dependency action. *Cf. Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 566–67 ¶ 19 (2018) (recognizing that the legislature has the primary responsibility to declare public policy). Applying issue preclusion here frustrates that public policy by allowing the juvenile court to effectively adjudicate a criminal charge and displace the criminal case. *Cf. People v. Gates*, 452 N.W.2d 627, 632–33 (Mich. 1990) ("[T]he purposes of a child-protective proceeding and a criminal proceeding are so fundamentally different that application in this instance of collateral estoppel would be contrary to sound public policy."); *People v. Percifull*, 12 Cal. Rptr. 2d 331, 335 (Ct. App. 1992) (refusing to apply issue preclusion in similar circumstances reasoning, in part, that the dependency proceeding "did not and could not reach the need, paramount in any criminal proceeding, to vindicate society's insistence that every citizen obey the penal laws").

**¶33** Apart from the legislative declaration of public policy reflected in § 8-202(C)(1), the public has a significant interest and role in the criminal proceedings that is nullified by the application of issue preclusion here. A grand jury indicted Crosby under § 13-3623(A)(1) while the dependency proceedings were pending. The State, representing the public's interest, has a right for a jury selected from the public to determine whether Crosby committed child abuse. *See* A.R.S. § 13-3983 (requiring both parties' consent to waive a jury trial); *Phx. City Prosecutor's Office v. Ybarra*, 218 Ariz. 232, 235 ¶ 14 (2008) ("[Section] 13-3983 requires that in all criminal cases the right to a bench trial is conditioned on the prosecution's consent."). That right does not exist in dependency proceedings. *See* Ariz. R.P. Juv. Ct. 6 ("Proceedings as set forth in these rules . . . shall proceed in a manner similar to the trial of a civil action before the court sitting without a jury . . . ."). The public also has a right to observe the criminal proceedings against Crosby and examine the record, which was not the case in the

dependency proceedings. *See* A.R.S. §§ 8-208(F) (providing that, with exception, dependency proceeding records "shall not be open to public inspection"), -525(B) (authorizing the juvenile court to close proceedings to the public); Ariz. R. Crim. P. 9.3(b) (requiring that all criminal proceedings be open to the public unless "an open proceeding presents a clear and present danger to the defendant's right to a fair trial by an impartial jury").

**¶34** The public's interests in criminal proceedings cannot be vindicated in a dependency proceeding. Likely for this reason, issue preclusion is rarely applied in a criminal case for a factual issue adjudicated in a civil proceeding. *Cf. State v. Edwards*, 136 Ariz. 177, 188 (1983) (explaining that Arizona courts apply preclusion in criminal cases only rarely because, "[w]hile the concerns of judicial economy may be a significant factor in applying the doctrine of [issue preclusion] in civil cases, the 'public interest in the accuracy and justice of criminal results is greater'" (quoting *Standefer v. United States*, 447 U.S. 10, 25 (1980))); *Gates*, 452 N.W.2d at 630 (recognizing rarity of "cross-over estoppel," between civil and criminal cases); *Gregory v. Commonwealth*, 610 S.W.2d 598, 600 (Ky. 1980) (noting that issue preclusion applied "civil to criminal" is "least common"). Indeed, although the Supreme Court has acknowledged that issue preclusion can apply in the civil-to-criminal combination, *see Yates v. United States*, 354 U.S. 298, 335–36 (1957), *overruled on other grounds by Burks v. United States*, 437 U.S. 1 (1978), the Court has yet to do so. And the only Arizona case to do so was a civil forfeiture proceeding, which is "quasi-criminal." *See Fitzgerald v. Superior Court*, 173 Ariz. 539, 546–48 (App. 1992).

**¶35** This is not a case in which the State pursued criminal charges to get a "second bite at the apple" after failing to prove its case in dependency proceedings—a scenario that may result in the "rare circumstance" when issue preclusion should apply. *See Lucido v. Super. Ct.*, 795 P.2d 1223, 1227 (Cal. 1990) (stating that "the public policies underlying collateral estoppel," including "protection of litigants from harassment by vexatious litigation . . . strongly influence whether its application in a particular circumstance would be fair to the parties and constitutes sound judicial policy"). The State indicted Crosby while the dependency proceedings were pending, and the superior court had exclusive authority in that circumstance to adjudicate the criminal charge against him through the criminal trial process. *See* § 8-202(C)(1). By applying issue preclusion here, the majority eradicates that authority and bypasses the prosecution and public's interest and roles in the pending criminal proceedings.

**¶36**　　　　To be clear, although issue preclusion rarely applies in the civil-to-criminal context, I do not advocate a "blanket rule" precluding application of issue preclusion in all criminal cases or even in those sharing issues in common with dependency proceedings, as the majority suggests. *See supra* ¶ 22. But to accommodate public policy, and particularly policies underlying § 8-202(C)(1), the court in a criminal case should always refuse to apply issue preclusion to factual disputes resolved in concurrently pursued dependency proceedings. I would permit the criminal case against Crosby to continue. I therefore respectfully dissent.